IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br><br><br>vs.<br><br><br>JOHN HENRY GILL,<br><br>Defendant. | **MEMORANDUM DECISION GRANTING MOTION TO DISMISS**<br><br><br><br><br>Case No. 2:06-CR-00725 PGC |

Defendant John Henry Gill, convicted of a sex offense in 2003, moves this court for an order to dismiss the indictment charging him with failing to register as a sex offender during September and October 2006 — as required by 18 U.S.C. § 2250(a) of the recently enacted Sex Offender Registration Notification Act (SORNA).[1] Mr. Gill alleges that, at least as applied to him, SORNA violates the Ex Post Facto Clause of the Constitution.[2] Mr. Gill raises two ex post facto challenges. He first argues that the Ex Post Facto Clause blocks any registration requirement for previously convicted offenders. He also argues that, even if SONRA could constitutionally be applied to him, it did not in fact apply to him; he failed to register before the

---

[1] Pub. L. 109-248 §§ 1-155, 120 Stat. 587, 590-611 (2006).
[2] U.S. Const., art. I, § 10.

Attorney General had promulgated Interim Rules making SORNA's criminal provision applicable to persons convicted before its effective date.  The court agrees with Mr. Gill's second, narrow submission.  Because SORNA did not apply to Mr. Gill until the Attorney General issued the Interim Rule in February 2007, and because his alleged failure to register predates the promulgation of that Rule, his indictment violates the Ex Post Facto Clause. Therefore, the court grants Mr. Gill's motion to dismiss.

## BACKGROUND

In considering a motion to dismiss, the court views all allegations, and draws reasonable inferences therefrom, in the light most favorable to the government.[3]  Viewed in that light, the record shows that Mr. Gill was convicted in Idaho of a sex offense (possession of sexually exploitative material) in 2003.[4]  After serving prison time, Mr. Gill was released in March 2006. Before his release, however, Mr. Gill signed a form regarding the Idaho Sex Offender Registry Notification and Registration.  Section IV of this form states, "if you move to another state, you must provide written notice of the new address to the Idaho State Police within five (5) days of the move.  You must register in the other state within the time period that its statutes require, but not to exceed ten (10) days . . . ."  Later that March, Mr. Gill registered as a sex offender in Idaho.

After that, Mr. Gill moved to Utah, but did not register as a sex offender in Utah.  In the meantime, on July 27, 2006, President George W. Bush signed into law the Adam Walsh Child

---

[3] *Ramirez v. Dep't of Corr, Colo.*, 222 F.3d 1238, 1240 (10th Cir. 2000).
[4] IDAHO CODE ANN. § 18-1507A (2007).

Protection Safety Act (AWA),[5] which (among other things) increased the federal punishment for failing to register as a sex offender from a misdemeanor to a felony.[6]

Mr. Gill was arrested in Utah and, on October 18, 2006, was arraigned on a one-count indictment charging him with violating 18 U.S.C. § 2250(a) for failure to register as a sex offender.  In a superceding indictment, the government clarified that Mr. Gill's failure to register occurred between September 19, 2006 and October 2006.

Well after Mr. Gill's indictment — on February 28, 2007 — Attorney General Alberto R. Gonzales promulgated the Interim Rule, specifying that "[t]he requirements of [SORNA] apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act."[7]   In the pending motion to dismiss, Mr. Gill argues (among other constitutional challenges) that he could not be required to register consistent with the Ex Post Facto Clause.  And, he argues that, in any event, he was not in fact required to register until the Attorney General issued the interim rule.  The court agrees with his second, narrow submission.

### DISCUSSION

At the outset, a bit of statutory background is relevant here.  Mr. Gill was indicted under 18 U.S.C. § 2250(a), part of the Adam Walsh Act, for failing to register as a sex offender.  On July 27, 2006, President George W. Bush signed the Adam Walsh Act into law.  This Act contains SORNA and the Federal Failure to Register as a Sex Offender statute, 18 U.S.C. §

---

[5] Adam Walsh Act, Pub. L. No. 109-248, 120 Stat. 587 (2006).
[6] 18 U.S.C. § 2250(a).
[7] 28 C.F.R. pt. 72.3

2250(a) (FFR) — the criminal provision at issue here.  Under the FFR, any sex offender who (i)

is required to register under SORNA,[8] (ii) travels in interstate commerce, and (iii) "knowingly

fails to register or update a registration as required by [SORNA]" is subject to a fine or

imprisonment for up to ten years.[9]

       The purpose of AWA is to "strengthen and increase the effectiveness of sex offender

registration and notification for the protection of the public."[10]  Among other things, AWA

---

[8] The specific registry requirements of SORNA are contained within Title I of AWA, and state as
follows:

    (a) In general — A sex offender shall register, and keep the registration current, in each
jurisdiction where the offender resides, where the offender is an employee, and where the
offender is a student. For initial registration purposes only, a sex offender shall also register
in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of
residence.
    (b) Initial registration — The sex offender shall initially register — (1) before completing a
sentence of imprisonment with respect to the offense giving rise to the registration
requirement; or (2) not later than 3 business days after being sentenced for that offense, if the
sex offender is not sentenced to a term of imprisonment.
    (c) Keeping the registration current — A sex offender shall, not later than 3 business days
after each change of name, residence, employment, or student status, appear in person in at
least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that
jurisdiction of all changes in the information required for that offender in the sex offender
registry. That jurisdiction shall immediately provide that information to all other jurisdictions
in which the offender is required to register.
    (d) Initial registration of sex offenders unable to comply with subsection (b) of this section —
The Attorney General shall have the authority to specify the applicability of the requirements
of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a
particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and
for other categories of sex offenders who are unable to comply with subsection (b) of this
section.

    42 U.S.C. § 16913(a)-(d).
[9] 18 U.S.C. § 2250(a).
[10] 28 C.F.R. pt. 72, Supplementary Information.

imposes an independent federal obligation on individuals convicted of a "sex offense" to register

with a sex offender registry where they live, go to work, or go to school.[11]  AWA supersedes the

Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act,

which was signed into law in 1994.[12]  The Jacob Wetterling Act subjected Mr. Gill to a

maximum punishment of one-year imprisonment for a first offense.[13]  In contrast, SORNA,

through the FFR, has increased the maximum penalty to ten years imprisonment.[14]

SORNA delegates to the Attorney General the authority to specify "the applicability" of

SORNA's requirements to sex offenders convicted before the Act took effect.  Based on this

authority,[15] on February 28, 2007, Attorney General Alberto R. Gonzales specified that "[t]he

requirements of [SORNA] apply to all sex offenders, including sex offenders convicted of the

offense for which registration is required prior to the enactment of that Act."[16]  The Attorney

General explained that the Interim Rule makes "it indisputably clear that SORNA applies to all

sex offenders regardless of when they were convicted," and that it forecloses all claims that it

does not apply to sex offenders "because a rule confirming SORNA's applicability has not be

issued."[17]

Mr. Gill raises two Ex Post Facto Clause issues.  He first contends that the Ex Post Facto

---

[11] 18 U.S.C. § 2250(a).
[12] 42 U.S.C. § 14071.  The Wetterling Act will be repealed three years after SORNA's effective date. Pub. L. No. 109-248, Title I § 129, 120 Stat. 600 (2006).
[13] 42 U.S.C. § 14072(i).
[14] 18 U.S.C. § 2250(a).
[15] 28 C.F.R. part 72.1.
[16] 28 C.F.R. Part 72.3
[17] 72 Fed. Reg. 39, 8894, 8896 (Feb. 28. 2007) (to be codified at 28 C.F.R. pt. 72).

Clause does not permit Congress to obligate him, in 18 U.S.C. § 2250(a), to register in the

federal registry as a sex offender after he committed his initial sex offense in 2003.  In the

alternative, Mr. Gill contends that the Attorney General's regulations effectively created criminal

penalties for his failure to register after the dates alleged in the indictment, thereby violating the

Ex Post Facto Clause.  This court has neither interpreted 18 U.S.C. § 2250(a) nor considered any

challenges to its constitutionality.[18]  The court will address Mr. Gill's two claims in turn, finding

the first one meritless and the second one meritorious.

*New Registration Requirement*

In response to Mr. Gill's first contention that the new registration requirement cannot be

applied to him, the government responds that the Supreme Court's decision in *Smith v. Doe*[19] is

controlling.  In *Smith v. Doe*, respondents challenged Alaska's Sex Offender Registration Act

(SORA) that required them to register as sex offenders, even though they had been convicted

before the Act's enactment.[20]  The Supreme Court held that the retroactive application of

Alaska's Sex Offender Registration Act did not violate the Ex Post Facto Clause because the Act

did not impose punishment, the only retroactive action forbidden by the Clause.[21]  Instead, the

Act merely provided the public with information about registered sex offenders "so members of

---

[18] One other court within the Tenth Circuit, the Western District of Oklahoma, has ruled on this
issue.  *See United States v. Deese*, No. CR-07-167-L, 2007 WL 2778362, at *7 (W.D. Okla. Sept.
21, 2007) (finding that "defendant was not required to register under SORNA prior to February
28, 2007"); *United States v. Templeton*, No. CR-06-291-M, 2007 WL 445481, at *5 (W.D. Okla.
Feb. 7, 2007) (finding that the "failure to register as a sex offender statute does not violate the *Ex
Post Facto* Clause").
[19] 538 U.S. 84 (2003).
[20] *Doe*, 538 U.S. at 105-06.
[21] *Id*. at 91-92.

the public can take the precautions they deem necessary before dealing with the registrant."[22]

"The purpose and principal effect of notification," the Court explained, "are to inform the public

for its own safety, not to humiliate" or otherwise punish the offender.[23]

     *Smith*'s interpretation of the Ex Post Facto Clause is controlling here.  SORNA's

registration requirement is functionally indistinguishable from the Alaskan requirement at issue

in *Smith*.[24]  Its purpose is not to punish sex offenders like Gill, but instead to inform the public

about a registrant's background.  Therefore, SORNA's retroactive application to sex offenders

convicted before its enactment does not in itself violate the Ex Post Facto Clause, as other courts

have concluded.[25]

---

[22]  *Id.* at 100.

[23]  *Id.*

[24]  *Id.* at 84.

[25] *See United States v. Lovejoy*, No. 4:07-cr-061, 2007 WL 2812681, at *6 (D. N.D. Sept. 28, 2007) (stating that 18 U.S.C. § 2250(a) applied to defendant because he traveled and failed to register after the issuance of the Interim Rule was issued); *cf. United States v. May*, Nos. 4:07-cr-00164-JEG, 1:07-cr-00059-JEG, 2007 WL 2790388 (S.D. Iowa Sept. 24, 2007) (holding that the Ex Post Facto Clause was not violated although defendant traveled before, but failed to register after, the Interim Rule)*; United States v. Kelton*, No. 5:07-cr-30-Oc-10GRJ, 2007 WL 2572204 (M.D. Fla. Sept. 5, 2007) (same); *United States v. Bennett*, No. 07CR20040, 2007 WL 2461696, at *1-2 (W.D. Ark. Aug. 27, 2007) (denying defendant's motion to dismiss and upholding the constitutionality of SORNA as applied to defendant who was convicted before SORNA was enacted, traveled at some point, but had not registered when arrested on May 23, 2007); *United States v. Hulen*, No. 07-30004, 2007 WL 2343885, at *1-2 (W.D. Ark. Aug. 15, 2007) (denying defendant's motion to dismiss as SORNA does not violate the Ex Post Facto Clause when defendant traveled at some point and was arrested for failing to register on April 13, 2007); *United States v. Sawn*, No. 6:07cr00020, 2007 WL 2344980, at *1 (W.D. Va. Aug. 15, 2007) (denying defendant's motion to dismiss as SORNA does not violate the Ex Post Facto Clause when defendant traveled in interstate commerce in January 2007, but was arrested and indicted for failing to register after the Interim Rule); *United States v. Torres*, No. 07-50035, 2007 WL 2343884, at *1 (W.D. Ark. Aug. 15, 2007) (denying defendant's motion to dismiss as SORNA does not violate the Ex Post Facto Clause when defendant, who traveled in interstate commerce at some point, failed to register by April 12, 2007).

*Retroactive Interim Rule*

Mr. Gill, however, raises a second and more focused challenge to SORNA.  He argues that, even if the registration requirements of the Act can be retroactively applied, they did not in fact apply to him in September and October 2006 (the non-registration dates charged in the indictment).  Instead, he contends, the Act's requirements — and its criminal penalties — did not become applicable to him until the Attorney General took action several months later (in February 2007) to make them retroactively applicable.  The government, on the other hand, responds that SORNA does not violate the Ex Post Facto Clause for reasons already set out in *Smith v. Doe*.  For support, the government correctly notes that several other district courts that have concluded that SORNA does not violate the Ex Post Facto Clause when applied to defendants similarly situated to Mr. Gill.[26]   The government's arguments, however, are not persuasive to this court — just as they have been unpersuasive to many other courts.[27]

---

[26] *United States v. Marcantonio*, No. 07-60011, 2007 WL 2230773 (W.D. Ark. July 31, 2007); *United States v. Mason*, No. 6:07-cr-52-Orl-19JGG, 2007 WL 1521515 (W.D. Fla. May 22, 2007); *United States v. Hinen*, 487 F. Supp. 2d 747 (W.D. Va. 2007);  *United States v. Markel*, No. 06-20004, 2007 WL 1100416 (W.D. Ark. Apr. 11, 2007); United *States v. Manning*, No. 06-20055, 2007 WL 624037 (W.D. Ark. Feb. 23, 2007); *United States v. Templeton*, No. CR-06-291-M, 2007 WL 445481 (W.D. Okla. Feb. 7, 2007); *United States v. Madera*, 474 F. Supp. 2d 1257 (M.D. Fla. 2007); *United States v. Mitchell*, No. 07CR20012, 2007 WL 2609784 (W.D. Ark. Sept. 6, 2007)*; United States v. Gonzales*, No. 5:07cr27-RS, 2007 WL 2298004 (N.D. Fla. Aug. 9, 2007); *United States v. Roberts*, No. 6:07-CR-70031, 2007 WL 2155750 (W.D. Va. July 27, 2007); *United States v. Muzio*, No. 4:07CR179 CDP, 2007 WL 1629836 (E.D. Mo. June 4, 2007).

[27] *See United States v. Kent*, No. 07-00226-KD, 2007 WL 2746773, at *2 (S.D. Ala. Sept. 20, 2007) (stating that "defendant must travel in interstate commerce and fail to register after 19 U.S.C. § 2250 became effective"); *United States v. Cole*, No. 07-cr-30062-DRH, 2007 WL 2714111 (S.D. Ill. Sept 17, 2007)*; United States v. Dillenbeck*, 4:07-cr-213-RBH, 2007 WL 2684838 (D. S.C. Sept. 7, 2007); *United States v. Stinson*, No. 3:07-00055,  No. 2007 WL 2580464 (S.D. W. Va. Sept. 7, 2007); *United States v. Heriot*, No. 3:07-323, 2007 WL 2199516 (D. S.C. July 27, 2007); *United States v. Muzio*, No. 4:07CR179 CDP, 2007 WL 2159462 (E.D.

8

With regard to the Supreme Court's decision in *Smith v. Doe*, it is enough to observe that the Court had before it only the question of whether constitutionally the legislature could create a new registration requirement applicable to sex offenders who had already committed an offense. The Court did not decide that new criminal penalties could be attached to conduct that had already occurred — the situation before this court.

Perhaps recognizing the weakness of this position, the government alternatively claims that the Interim Rule was not necessary to reach Mr. Gill, as SORNA already applied to him when it took effect on July 27, 2006. If correct, this argument would succeed in sustaining the indictment. The argument, however, is not correct.

### SONRA's Application to Mr. Gill Without the Interim Rule

To understand when SONRA became applicable to convicted sex offenders like Mr. Gill, it is necessary to review several of its provisions. SONRA establishes a national sex offender registry. SONRA specifies a general registration requirement, which states that "[a] sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides," works, or attends school.[28] Read in isolation, this subsection (subsection (a)) directs all convicted sex offenders, such as Mr. Gill, to register according to SORNA. It is this provision,

---

Mo. July 26, 2007); *United States v. Marvin Smith*, No. 2:07-cr-00082, 2007 WL 1725329 (S.D. W. Va. June 13, 2007); *United States v. Kapp*, 487 F. Supp. 2d 536 (M.D. Pa. 2007); *see also United States v. Deese*, No. CR-07-167-L, 2007 WL 2778362 (W.D. Okla. Sept. 21, 2007) (holding that "prosecution of a defendant pursuant to 18 U.S.C. § 2250(a) based on defendant's interstate travel that occurred prior to the effective date of SORNA violates the Ex Post Facto Clause"); *United States v. v. Sallee,* No. CR-07-152-L (W.D. Ark. Aug. 13, 2007) (same); *United States v. Bobby Smith*, 481 F. Supp. 2d 846, 850-51 (E.D. Mich. 2007) (concluding that 18 U.S.C. § 2250 does not apply to defendant when he traveled prior to SORNA's enactment).
[28] 42 U.S.C. § 16913(a).

obviously enough, that the government relies upon in support of its position that Mr. Gill was required to register.  However, this subsection of the statute cannot be read in isolation, but must be read in the context of the overall statutory scheme.[29]  Specifically, subsection (a) must be read together with subsection (d).

Subsection (d) of SORNA expressly delegated to the Attorney General the authority to specify the "applicability" of SORNA's requirements to sex offenders convicted before the enactment of the Act.[30]  The subsection provides:

> The Attorney General shall have the authority to specify the *applicability* of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.[31]

The court must follow the cardinal rule of statutory interpretation and first look to the plain language of the statute.[32]  As well-explained by the U.S. District Court for the Middle District of Pennsylvania in *United States v. Kapp*,[33] the plain language of subsection (d) contains two clauses: the first clause delegates to the Attorney General the authority to determine SORNA's applicability to sex offenders convicted before its enactment, while the second clause delegates to the Attorney General the authority to prescribe rules for those sex offenders who were unable to register by their state's registration laws prior to SORNA's enactment.  The first

---

[29] *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).
[30] 42 U.S.C. § 16913(d).
[31] 42 U.S.C. § 16913(d) (emphasis added).
[32] *Caminetti v. United States,* 242 U.S. 470, 485 (1917).
[33] 487 F. Supp. 2d 536, 542 (M.D. Pa. 2007).

clause of subsection (d) covers the first group — i.e., past offenders who were, in the language of the statute, "convicted before July 27, 2006."  This clause unambiguously delegates authority to the Attorney General to determine SORNA's retroactive application — that is, in the words of the statute, the "applicability" of the registration requirement.[34]  Without such a determination from the Attorney General, the statute had no applicability to previously convicted sex offenders like Mr. Gill.

Confirming this conclusion is the second clause of the provision, which says the Attorney General can promulgate rules for "*any such sex offenders* and for other categories of sex offenders who are unable to comply with subsection (b) of this section."[35]  Subsection (b) provides initial registration requirements for sex offenders who must register either (1) before he completes his sentence, or (2) three days after being sentenced, if the sex offender is not sentenced to prison.[36]  While neither of these registration requirements contemplates a sex offender who, like Mr. Gill, was convicted and finished his prison sentence before SORNA's enactment, he is "such sex offender" as described in the second clause of subsection (d). Accordingly, for offenders like Mr. Gill to be covered by the law, the Attorney General had to determine its applicability and to specify rules for registration, as he did in the Interim Rule.

In response to this seemingly straightforward conclusion, the government offers three arguments.  First, it emphasizes that the plain language of subsection (a) generally requires a sex

---

[34] *See United States v. Deese*, No. CR-07-167-L, 2007 WL 2778362, at *2 (W.D. Okla. Sept. 21, 2007).

[35]  42 U.S.C. § 16913(d) (emphasis added); *see also United States v. Dillenbeck*, No. 4:07-cr-213-RBH, 2007 WL 2684838, at *2 (D. S.C. Sept. 7, 2007).

[36] *Id.*

offender to "register, and keep the registration current, in each jurisdiction where the offender

resides," or is an employee or a student.  But to read this general language in subsection (a) as

covering all sex offenders, regardless of when they were convicted, would simply read out of the

statute subsection (d)'s direction that it is the Attorney General who determines the

"applicability" of the provision.  The government seeks to avoid this problem by reading

subsection (d)'s "applicability" provision as pertaining only to those sex offenders who were

unable to register before SORNA's enactment — to those in prison on the date of enactment, for

example.  To bolster this argument, the government points out that subsection (d)'s title is

"Initial registration of sex offenders unable to comply with subsection (b) of this section."  The

problem with this argument, however, is that a court will only look to the title of the section

when the language of section is itself ambiguous.[37]  Nothing in the language of subsection (d) is

ambiguous.  It plainly vests in the Attorney General authority "to specify the *applicability* of the

requirements of this subchapter to sex offenders convicted before July 27, 2006 . . ." — not just

those sex offenders who happened to reside in prison before that date.

      Second, the government relies on the general purposes behind the Act, contending that to

interpret it as becoming effective in February 2007 to offenders like Mr. Gill would thwart

Congress' goal of creating a broad national registry.  Senator Orrin Hatch, a co-sponsor of the

Adam Walsh Act, explained the goal of the statute as creating a comprehensive database on sex

offenders:

                Laws regarding registration for sex offenders have not been

---

[37] *State v. Okla. v. U.S. Civil Serv. Comm'n*, 153 F.2d 280, 283 (10th Cir. 1946).

12

> consistent from State to State[;] now all States will lock arms and
> present a unified front in the battle to protect children.  Web sites
> that have been weak in the past, due to weak laws and haphazard
> updating and based on inaccurate information, will now be
> accurate, updated, and useful for finding sex offenders.[38]

This clear congressional purpose does not shed light on the narrow issue the court is considering — whether the Act applied to sex offenders before the Attorney General issued the interim rule in February 2007.  After the Attorney General followed congressional direction and established the Rule, a "unified front" existed on sex offender registration around the country.  Indeed, the court takes judicial notice of the fact that Mr. Gill is now registered in the national sex offender registry.[39]  Thus, the narrow issue before the court is what to do with the historical fact that some sex offenders, like Mr. Gill, did not register before February 28, 2007, but registered after that date.  And even with regard to this subset of offenders, the court does not conclude that they are beyond the reach of criminal statutes.  While the *federal* law may not have applied at that time, *state* criminal statutes may still cover many of these offenders if they failed to follow state registration requirements.  For instance, Mr. Gill can still be held criminally accountable in Idaho for his failure to register in 2006.[40]  Thus, the stakes in this case are not as high as the government would suggest.  The only issue is whether, on top of previously existing state registration law, a new federal registration requirement went into effect on February 28, 2007 (as Mr. Gill contends) or about seven months early (as the government contends).

Finally, the government argues that reading the statute as Mr. Gill does violates the canon

---

[38]  152 CONG. REC. S8012, 8013 (daily ed. July 20, 2006) (statement of Sen. Hatch).

[39]  http://www.nsopr.gov/.

[40]  IDAHO CODE ANN. § 18-1507A (2007).

of statutory construction that statutes should be construed to avoid giving "such a sweeping delegation of legislative power" to another branch of government "that it might be unconstitutional."[41]   The government argues that Congress did not intend to let the Attorney General generally determine the applicability of SONRA to offenders convicted before its enactment.  The problem with this position is that, no matter how the statute is interpreted, Congress has delegated *some* significant authority to the Attorney General.  While the government's interpretation of that delegation is obviously narrower than Mr. Gill's, the canon of statutory construction it relies upon only directs courts to avoid reading a statute to give unconstitutionally broad delegation of authority.  Allowing the Attorney General to determine retroactive applicability of SONRA does not appear to transgress the delegation doctrine's boundaries — which, at least as currently understood, are somewhat generous.[42]  After all, if Congress can delegate to another branch of government the authority to create a body of federal sentencing guidelines governing sentencing for all federal crimes,[43] it can surely delegate the more modest issue of establishing an effective date for a sex offender registration statute. Moreover, the canons of statutory construction do not solely support the government.  A more well-known canon — and one more directly applicable to criminal statutes — is the rule of lenity.  As the Supreme Court has explained, "when confronted with two rational readings of a criminal statute, one harsher than the other, we are to choose the harsher only when Congress has

---

[41] *See United States v. Hinen*, 487 F. Supp. 2d 747, 753 (W.D. Va. 2007) (citing *Indus. Union Dep't Am. Petroleum Inst.*, 448 U.S. 607, 646 (1980)).
[42] *See, e.g., United States v. Madera*, 474 F. Supp. 2d 1257, 1260-61 (M.D. Fl. 2007).
[43] *Mistretta v.United States*, 488 U.S. 36 (1989).

14

spoken in clear and definite language."[44]  The "clear and definite" language here, if anything, required the Attorney General to act to make SONRA applicable to Mr. Gill.

In sum, the plain language of SORNA's registration requirements delegates to the Attorney General the authority to determine the Act's applicability to sex offenders like Mr. Gill, who were convicted before the Act's enactment.  The Attorney General did not make the Act retroactive until seven months after SORNA's enactment, on February 28, 2007.  Therefore, SORNA's requirements did not apply to Mr. Gill until the Interim Rule was issued.   There is no dispute that SORNA has increased the federal punishment for failing to register as a sex offender: 18 U.S.C. § 2250(a) increased criminal liability ten-fold — from a misdemeanor with up to one year imprisonment under the Wetterling Act to a federal felony with up to ten years imprisonment.[45]  The Ex Post Facto Clause does not permit such increased criminal penalties to be applied retroactively to Mr. Gill's failure to register before promulgation of the Interim Rule.

---

[44] *Pasquantino v. United States*, 544 U.S. 349, 383 (2005) (internal citations omitted).
[45] 18 U.S.C. § 2250(a).

**CONCLUSION**

Accordingly, Mr. Gill's motion to dismiss is hereby GRANTED [#31], and the court

ORDERS that the indictment be DISMISSED.  The Clerk's Office is directed to close the case.

 DATED this 15th day of October, 2007.

SO ORDERED.

BY THE COURT:

Paul G. Cassell
United States District Judge

16